[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage. Both parties have resided continuously in Connecticut for many years prior to the filing of this complaint. The court has jurisdiction in this matter.
The matter was tried to the court on diverse dates between December 4, 2001 and December 13, 2001. Both parties appeared at trial and were represented by counsel.
The court has carefully considered all of the evidence introduced at trial as well as the applicable provisions of Connecticut General Statutes §§ 46b-62, 46b-81 and 46b-82. The court finds that the facts set forth below were proven by a preponderance of the evidence at trial.
 FACTUAL FINDINGS
The plaintiff and the defendant were married on August 6, 1966 in Quebec, Canada.
There are no minor children of the marriage. A son and a daughter, both of whom are now adults, were born to the parties. None of the parties have received aid or assistant from the State of Connecticut.
The plaintiff is 57 years old. During the past year, she began work as CT Page 16852 a certified nurse's assistance at a convalescent home.
The plaintiff has a ninth grade education and was trained as a hairdresser. She also graduated from a three-month certified nurses's assistant course.
In addition to her duties as a mother and homemaker, the plaintiff worked during the marriage at the restaurant and contracting businesses operated by her husband.
The plaintiff was diagnosed with cancer approximately three years ago, but is now in remission. She also suffers from diabetes and varicose veins. These medical problems do not presently prevent her from working.
The defendant, 58 years old, works as a self-employed building contractor. He was previously employed as a chef and operated his own restaurant. Though he has in the past occasionally built houses on speculation, the bulk of his contracting business involves home improvement and particularly bathroom renovations.
The defendant suffers from atrial fibrillation, a heart condition. In February 2001, he was diagnosed with tuberculosis, and he was afflicted with polio as a child. These maladies have generally not prevented him from working long hours as a contractor, or from regularly exercising by riding his bicycle.
The court finds that both parties worked industriously during the marriage, and continue to do so.
From the evidence presented at trial, the court finds that the parties' marriage has broken down irretrievably. Although the court finds that both parties must bear responsibility for the deterioration of their relationship, the court also finds that the defendant's extramarital affairs contributed significantly to the cause of the breakup.
The plaintiff earns net weekly wages of $264.00 from her part-time job as a nursing assistant. She currently works between 24-34 hours per week and intends to work full-time after the divorce. She earns $10.50 per hour. The court finds that the plaintiff's employment is commensurate with her education, vocational training and abilities.
The defendant claimed on his December 11, 2001 financial affidavit that he earns gross weekly income of $1,186.00 and net weekly income of $645.63, from his self-employment. These figures equate to gross annual income of $61,672.00, and to net annual income of $33,572.76. CT Page 16853
The defendant's business had gross contracts of $402,813.00 during 2001 (see plaintiff's Exhibit 7). Some of the work on those contracts will not be completed in 2001. It is estimated that the defendant's business will receive approximately $387,000.00 in gross receipts during the year 2001. From that sum, the defendant must pay for all materials, and the labor expenses of subcontractors, before he can realize a profit.
The defendant introduced his federal income tax returns for the past three years into evidence. The defendant had adjusted gross income of $60,044.00 for 2000, $29,442.00 for 1999, and $41,188.00 for 1988.[1]
The defendant's financial picture is clouded by the fact that he pays a number of his personal expenses through his business checking account, and by the fact that for a number of years he has taken checks made payable to cash from those business accounts.
Additionally, in a financial statement submitted to the American Savings Bank during September 2000, the defendant stated that his projected income for the year 2000 was $91,870.00 (see plaintiff's Exhibit 9). That evidence, plus other credible evidence at trial concerning the defendant's current year gross profits from his business, the IRA deductions indicated on his last three years tax returns, the assets which have been acquired by the parties during the marriage, their lifestyle and expenses, and the defendant's custom of taking cash and paying certain personal expenses out of his business accounts, lead this court to find that the defendant's gross annual income is larger than the amount he claimed at trial.
Based on all of the foregoing, the court finds that the defendant's gross annual income from his self-employment is in the approximate range of $70-75,000.00 per annum.
The September 29, 2000 financial statement to the American Savings Bank was signed by both of the parties. In it the plaintiff and the defendant claimed that the value of all their assets totaled $771,100.00. The plaintiff's December 11, 2001 financial affidavit indicated a value of $319,375.42 in marital assets. The defendant's December 11, 2001 financial affidavit listed the total value of all assets as being $209,666.00.
Where necessary, the court will comment on the value of certain assets in the orders below which allocate them.
 ORDERS
The court has carefully considered all of the evidence at trial, the CT Page 16854 arguments of counsel and the appropriate provisions of the statutes referenced above in issuing the following orders:
1. A judgment dissolving the marriage on the basis of irretrievable breakdown may enter.
2. The defendant shall pay to the plaintiff, as periodic alimony, the sum of $375.00 per week. Said alimony shall terminate upon the death of either party, the plaintiff's remarriage, or the plaintiff's cohabitation with another man.
3. The defendant shall maintain the plaintiff on medical insurance available through his employment for the full post-judgment period allowed by federal COBRA laws. Any cost for the maintenance of the plaintiff's coverage for this period shall be split equally by the parties.
4. The marital home at 41 Walnut Farms Drive, which has already been listed for sale at an asking price of $389,000.00, shall be sold. The court is aware that a realtor has recently suggested that the parties should consider lowering the sale price. The net proceeds from the sale of 41 Walnut Farms Drive shall be allocated between the parties as follows: 60% to the plaintiff and 40% to the defendant. The court defines net proceeds to mean the gross purchase price, minus the existing mortgage and home equity credit line debt owed on the property, the cost, if any, for removing an in ground oil tank, outstanding tax obligations, normal and customary attorney's fees and closing costs and adjustments, the remaining home sprinkler system debt, and the costs incurred prior to listing the property for renovating the bathroom. The property shall continue to be listed with a realtor mutually agreed to by the parties. The plaintiff and the defendant are ordered to cooperate fully with the expeditious marketing and sale of the property, and to do all acts necessary to effectuate same. Pending sale, neither party is to increase the amount of the indebtedness currently owed on the property by remortgaging it, or by increasing the home equity credit line debt. Pending sale, neither party shall otherwise pledge, lien, hypothecate or encumber said property.
5. The defendant individually owns a lot on Mountain Spring Road which he purchased on speculation for $25,000.00, and which he hoped to develop and sell through his business.
The defendant claimed on the financial affidavits which he submitted to the court that the property has a value of $25,000.00. However, on the financial statement submitted in September 2000 to the American Savings Bank, the defendant ascribed a value of $150,000.00 to that property. CT Page 16855
The evidence at hearing established that there are a number of problematic logistical hurdles which the defendant must overcome prior to developing the lot. His contract to purchase the property clearly indicated that the defendant was buying the lot "as is" and that the "property is not a buildable lot." (See defendant's Exhibit E). In order for the town to approve the lot for development, the defendant must either install city sewers to the property, or build an approved septic system on the property. The court finds that it is unlikely that the defendant will satisfy the requirements for building approval in the near future. The court finds that the present value of the property is probably closer to the $25,000.00 amount listed on his financial affidavit. The court orders that the lot be sold and the net proceeds from said sale be divided equally by the parties. The court defines the term "net proceeds" to mean the gross sales price, minus any outstanding tax obligations and the normal and customary attorneys fees, closing costs and adjustments. The defendant is ordered to forthwith list the property for sale with a realtor mutually agreed to by the parties. The defendant is ordered to cooperate with the expeditious marketing and sale of said property, and to do all acts necessary to effectuate same. Pending sale of the property the defendant is ordered not to mortgage the property or to otherwise pledge, lien, hypothecate or encumber the property in any manner.
6. During the course of the marriage, the parties acquired a collection of fine wines. The parties disagree over its value. The court orders that the wine which is currently in the possession of the plaintiff be distributed equally, according to its worth, between the parties. The court directs that the equitable division of this asset occur within thirty days of the date of this judgment. If the parties are unable to agree on an equitable distribution within 30 days, the court directs that said wine be sold or auctioned by a neutral party, and that the net proceeds, after the cost of sale or auction, be distributed equally between the plaintiff and the defendant.
7. The defendant shall retain and own exclusively his contracting business known as Michaud Enterprises, LLC, the tools and equipment of his trade, the automobiles listed on his financial affidavit, and the business and personal checking and savings accounts listed on his financial affidavit. The plaintiff shall retain her items of personal jewelry.
8. The parties are ordered to agree on an equitable distribution of all household furnishings within 60 days of the date of this judgment. If the parties cannot agree, all household furnishings are to be consigned for sale or auction by a neutral party. The net proceeds thereof, after CT Page 16856 payment of sale or auction costs, shall be divided equally by the parties.
9. The court orders that the parties' boat and trailer be sold. The boat and trailer are to be sold by a broker or other competent person, mutually agreed to by the parties. The net proceeds from said sale, after payment of reasonable sales costs, are to be divided equally by the parties.
10. The plaintiff shall retain and exclusively own the automobile in her possession. The plaintiff shall pay and hold the defendant harmless from the loan debt owed on said automobile. The plaintiff shall also retain the checking and savings accounts listed on her financial affidavit.
11. Each party shall retain and own exclusively the individual retirement account (IRA) in their name.
12. The parties shall divide the debt for their daughter Chantal's college education equally. With the exception of that debt, and any other debts specifically referred to herein, each party shall pay, and hold the other party harmless from, the debts listed on their respective financial affidavits.
13. The defendant shall maintain in full force the $300,000.00 life insurance policy insuring his life, pay all premiums due thereon, and name the plaintiff the irrevocable beneficiary thereof, until the plaintiff attains the age of 65.
14. The court orders that the defendant shall pay to the plaintiff, as a contribution toward her counsel fees, the sum of $3,000.00 within 90 days of the date of this judgment.
15. The court orders that the parties shall annually exchange, on or before April 15 of each year, their federal income tax returns and supporting documentation for the prior tax year.
SO ORDERED.
Dyer, J.